# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MY DAILY CHOICE, INC., | Case No.: 2:20-cv-00809-APG-DJA |
| Plaintiff | **Order (1) Denying Motion for Leave to File Under Seal, (2) Denying Motion for Preliminary Injunction, and (3) Denying Motion to Dismiss for Lack of Personal Jurisdiction** |
| v. | |
| SHANNA LEE HUNTER, et al., | |
| Defendants | [ECF Nos. 8-11] |

Plaintiff My Daily Choice, Inc. (MDC) sells hemp-derived products through a network of affiliates.  It sued two of its former affiliates, defendants Shanna Lee Hunter and Summer Giaquinta, in state court for breach of contract, breach of the implied covenant of good faith and fair dealing, misappropriation of trade secrets, and tortious interference with a contract.  The defendants removed the action to this court based on diversity jurisdiction. ECF No. 2.  MDC moves to enjoin the defendants from: 1) promoting other companies' products on the same social media web pages that are or were used to promote MDC products; 2) wrongfully recruiting or soliciting MDC affiliates; 3) using or disclosing MDC confidential information to third parties; and 4) making disparaging or negative comments about MDC or its products.  The motion essentially seeks to enforce MDC's non-compete provisions.  MDC also moves to file under seal its Policies and Procedures, arguing the document contains sensitive and confidential business information.  The defendants oppose MDC's motions.  They also move to dismiss for lack of personal jurisdiction.[1]  For the reasons discussed below, I deny the motions.

---

[1] I will address the defendants' motion to dismiss for failure to state a claim in a separate order.

# I. BACKGROUND[2]

In May 2017, MDC launched HempWorx, "a line of high-quality hemp-derived products." ECF No. 2-1 at 5.  "As a direct sales company, MDC's products are sold exclusively through its network of independent 'affiliates.'" *Id.*  Affiliates build and manage a sales team to recruit and train others to sell MDC's products and are compensated based on their sale of products to other affiliates and customers they refer to the company. *Id.*  Hunter and Giaquinta were both MDC affiliates who maintained leadership roles in the network. *Id.* at 8.

MDC requires affiliates to agree to the terms in its Policies and Procedures (P&P), which includes a prohibition on what MDC labels "cross-recruiting." *Id.* at 6.  This prohibits a former affiliate, for one year following the affiliate's termination with MDC, from "recruit[ing] any MDC Affiliate or Customer for another network marketing business" unless they are recruiting persons they had sponsored at MDC. *Id.*  The P&P also prohibits affiliates from disclosing or using MDC's confidential information for non-MDC business related purposes and from making negative comments and remarks about the company or its products while working as an MDC affiliate. *Id.* at 7.  And for a period of one year following termination of the P&P, an affiliate may not advertise another competing business or "network marketing program" on the same social media site that she advertises or has advertised MDC and its products, and the affiliate must deactivate her profile page if her status with MDC is inactive or canceled. *Id.* at 7-8.

MDC alleges that in early 2020, the defendants became distributors for a competing business, Bio-Reigns, Inc., and began a campaign to harm MDC's business and recruit MDC affiliates to join Bio-Reigns, in violation of the P&P. *Id.* at 8-9.  MDC also alleges that the defendants have misappropriated its trade secrets and confidential information, which includes

---

[2] These facts are taken from the complaint for purposes of the motions.

identities and contact information of MDC affiliates, customers, network groups, affiliate

rankings, and other financial and business information. *Id.* at 10-11.

## II.  ANALYSIS

### A. Rule 12(b)(2) Motion to Dismiss

While the parties present several different arguments about whether I may exercise

personal jurisdiction over the defendants, the answer turns on whether the defendants agreed to

be bound to the forum selection clause in the P&P.  MDC argues the defendants agreed to the

P&P, so it is a valid contract and the defendants are subject to its forum selection clause.  The

defendants contend that MDC fails to plausibly allege the P&P is an enforceable contract and

they have no recollection of viewing the updated P&P at issue.

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears

the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach

Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  At this stage, the plaintiff need only make a

prima facie showing of jurisdictional facts to survive the motion to dismiss. *Mavrix Photo, Inc. v.

Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  Thus, I "only inquire into whether the

plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction."

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation and

alteration omitted).  If the defendants offer evidence controverting these allegations, the plaintiff

must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott

v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).  Uncontroverted allegations in the complaint

must be taken as true and conflicts between parties over statements contained in affidavits must

be resolved in the plaintiff's favor. *Id.*

1    A defendant may waive objections to personal jurisdiction through a forum selection

2  clause "provided that the defendant agrees to be so bound." *Holland Am. Line Inc. v. Wartsila N.*

3  *Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007).  "[A] forum [selection] clause should control absent

4  a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1,

5  15 (1972).  Such a clause may be unreasonable if its inclusion in the agreement "was the product

6  of fraud or overreaching," if the party seeking to repudiate the clause would be deprived of her

7  day in court if the clause was enforced, or "if enforcement would contravene a strong public

8  policy of the forum on which suit is brought." *Holland Am. Line Inc.*, 485 F.3d at 457.

9    The complaint alleges that the defendants agreed to the P&P, which provides for

10  exclusive jurisdiction and venue in Clark County, Nevada. *See* ECF No. 2-1.  The P&P is

11  attached to MDC's motion for preliminary injunction.[3] ECF No. 10-1 at 60.  The defendants

12  argue that (1) MDC fails to plausibly allege that the P&P constitutes an enforceable contract

13  because MDC did not attach it to the complaint or plead facts about how they became affiliates,

14  (2) MDC fails to present evidence that the defendants received or signed the P&P or any other

15  agreement, and (3) the P&P that MDC attached to its motion became effective on November 1,

16  2018, after the defendants became affiliates. ECF No. 11 at 19-20.  MDC responds that it is not

17  required to attach a contract to the complaint to meet the plausibility standard. ECF No. 21 at 7.

18  And it argues that the defendants agreed to the P&P because MDC sent them a link to the

19  updated P&P and required that every affiliate confirm that they agreed to the P&P to remain an

20  affiliate. *See* ECF Nos. 21 at 6-7; 21-1 at 2 (declaration of Karli Thomas describing the web page

21

22

23  [3] I deny MDC's motion for leave to file the P&P under seal because the defendants point out that the document is publicly available on MDC's website and thus it contains no sensitive or confidential business information. *See* ECF No. 16 at 3 n.2.

pop-up and MDC records confirming the defendants clicked on the link agreeing to the terms); 21-2 at 2 (screen shot).

MDC has presented jurisdictional facts to survive the motion to dismiss.  MDC was not required to attach the P&P to its complaint. *AC Media Grp., LLC v. Sprocket Media, Inc.*, No. 2:16-cv-2145-APG-GWF, 2017 WL 1458198, at *3 (D. Nev. Apr. 24, 2017).  And MDC pleaded sufficient facts alleging the existence of a contract because it stated that a condition of enrollment is agreeing to the terms and conditions set forth in the P&P. *See* ECF No. 2-1 at 6.

The defendants do not argue that the P&P's forum selection clause was the product of fraud or overreaching, or was otherwise unreasonable.  Instead, they argue that they never consented to be bound to it.  But MDC has presented evidence that the defendants agreed to the updated P&P.  Resolving conflicting statements and evidence in MDC's favor, MDC has plausibly alleged that the defendants entered into a contract and agreed to be bound by the P&P, which included a valid forum selection clause providing for exclusive jurisdiction in Nevada.

The defendants' reliance on *Coleman v. Alaska USA Federal Credit Union* is misplaced. There the court held that the defendant's pop-up notice, which required a party to close the pop-up to return to his or her account page, did not provide sufficient notice of the specific changes being made to the account agreement, including an arbitration provision, and was thus insufficient to constitute a binding contract. No. 3:19-cv-0229-HRH, 2020 WL 110742, at * 5 (D. Alaska Jan. 9, 2020).  Here, MDC's pop-up notice stated that "all Affiliates must agree to the below practices," included a link to the P&P above the confirmation button, and at the bottom of the pop-up required the affiliate to click on the button that stated, "I Understand and Agree to these Policies and Procedures." ECF No. 21-2 at 2.  Thus, the pop-up more closely resembles a clickwrap agreement for which "[c]ourts have [] been more willing to find the requisite notice

1  for constructive assent" because "the user is required to affirmatively acknowledge the

2  agreement before proceeding with the use of the website." *Nguyen v. Barnes & Noble Inc.*, 763

3  F.3d 1171, 1176–77 (9th Cir. 2014); *see also Zaltz v. JDATE*, 952 F. Supp. 2d 439, 451-52

4  (E.D.N.Y. 2013) (enforcing forum selection clause where prospective members had to check a

5  box confirming they read and agreed to the website's terms and conditions to obtain an account).

6  Accordingly, the defendants waived any objections to personal jurisdiction by agreeing to be

7  bound to the forum selection clause.

8        The defendants ask to conduct jurisdictional discovery related to their alleged acceptance

9  of the P&P. ECF No. 24 at 7.  They assert that (1) Karli Thomas was not the Director of

10  Compliance during the time in question and thus has no personal knowledge of the defendants'

11  alleged agreements and (2) they have no specific recollection of receiving, viewing, or accepting

12  the pop-up.[4] ECF No. 24 at 10-11.  But MDC provided screen shots from its online business

13  records showing that Hunter acknowledged the pop-up on October 31, 2018 at 11:42 p.m. and

14  Giaquinta acknowledged the pop-up on November 1, 2018 at 2:13 p.m. ECF Nos. 21-3; 21-5.

15  The defendants do not argue that the user identifications are not theirs or that this evidence is

16  inaccurate.  Accordingly, I deny the defendants' request for jurisdictional discovery because

17

18

---

[4] Because these jurisdictional issues pertain to the preliminary injunction motion (the defendants argue that MDC is unlikely to succeed on the merits because I lack personal jurisdiction to hear the case), I have flexibility in relying on evidence that may not be in admissible form to decide whether to grant an injunction. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (noting a district court "may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm").  Thomas's declaration that the defendants agreed to the P&P is substantiated by screen shots of business records that likely would be admissible as business records. *See* Fed. R. Evid. 803(6).  However, even if the statements in her declaration are inadmissible hearsay, I do not strictly apply the rules of evidence at this stage in the proceedings.

there is not a reasonable probability that discovery would change the outcome. *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).

   **B. Preliminary Injunction**

   "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  To qualify for a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of equities favors the plaintiff, and (4) an injunction is in the public interest. *Id.* at 20.  In the alternative, a "sliding scale" approach may be used if the plaintiff can demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

   While intangible injuries like the loss of goodwill, business reputation, and prospective customers may qualify as irreparable harm, the plaintiff must submit evidence to establish a likelihood of this kind of injury. *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013); *see also Bofi Fed. Bank v. Erhart*, No. 15-cv-02353-BAS(NLS), 2016 WL 4680291, at *9 (S.D. Cal. Sept. 7, 2016) (finding plaintiff failed to establish likelihood of irreparable harm because there was no evidence that the defendant was likely to disclose additional nonpublic information).  Nevada courts have defined irreparable harm as "an injury for which compensatory damages would not suffice." *Excellence Cmty. Mgmt. v. Gilmore,* 351 P.3d 720, 723 (Nev. 2015) (quotation and citation omitted).  In *Excellence Community Management*, the Supreme Court of Nevada held that the plaintiff failed to show irreparable harm from the loss of client relationships because the former employee did not provide unique

services, there was conflicting evidence as to whether a restrictive covenant was breached, and damages were quantifiable. *Id.* at 723-25.

MDC argues that an injunction is warranted to prevent the following irreparable injuries: (1) loss of affiliates, which harms MDC's "business relationships, interests and profits, the extent of which is not easily determined;" and (2) disparaging and false comments harming MDC's "culture, business model, integrity, and goodwill." ECF No. 10 at 9-10.  The defendants respond that MDC fails to demonstrate that they used any confidential information or trade secrets to develop their business at Bio-Reigns. ECF No. 17 at 26.  And they assert that their services were not unique because they were two affiliates in a large network of independent affiliates. *Id.* Thus, they argue that MDC cannot establish irreparable harm under the standard set forth in *Excellence Community Management. Id.*

MDC relies on pre-*Winter* cases to argue it needs to show only the "possibility" of losing customers or goodwill. *See* ECF No. 22 at 11.  That is no longer the appropriate standard. MDC's first potential injury stems from the defendants' alleged wrongful solicitation of MDC affiliates.  MDC contends it is losing its network of affiliates, which is vital to its business and cannot be remedied through damages.  But it has not shown that the defendants' alleged breaches have resulted in actual losses to its network.  While Thomas's declaration lists numerous individuals she believes the defendants have directly or indirectly recruited, she does not explain how the defendants recruited them or how MDC learned of the alleged conduct.  Thomas also does not explain how many individuals were successfully recruited to join Bio-Reigns and how many of those individuals were previously sponsored by the defendants and therefore exempt from the cross-recruiting prohibition.  Thus, MDC has not presented sufficient evidence that the defendants successfully cross-recruited MDC affiliates who they had not previously sponsored.

The defendants admit they have personally sponsored five people to join Bio-Reigns, but they argue they were entitled to recruit them because the defendants sponsored them at MDC. ECF No. 17 at 10.  They note that Kristen Ragguci was personally sponsored by Hunter's husband, who is her business partner and thus covered by the exemption to the cross-recruitment prohibition. *Id.*  MDC replies that it has video evidence of Giaquinta admitting to recruiting former MDC affiliates Callie and Andrew Eisele, who she did not sponsor while at MDC. *See* ECF No. 22 at 7.  But that YouTube video is no longer available for viewing.[5]  Even assuming that evidence would demonstrate that the defendants cross-recruited in violation of the P&P, MDC provides no information on the former affiliates' rankings or job responsibilities or how losing them has impacted its business.  MDC has not explained why damages would not suffice to replace affiliates like the Eiseles and Ragguci, who do not provide unique services.

As to MDC's concerns regarding the loss of goodwill and reputation, MDC fails to sufficiently show any conduct that violated the P&P.  Section 36.5 of the P&P restricts disparaging and negative comments by current affiliates. *See* ECF No. 10-1 at 4, 50.  But MDC's evidence shows incidents that occurred after the defendants were no longer MDC affiliates.[6] Thomas's declaration states that Giaquinta's affiliation with MDC ended around September 27, 2019.  Giaquinta's post of an MDC laboratory test allegedly seeking to discredit MDC's product occurred on January 9, 2020. *Id.* at 4.  And video footage of Giaquinta promoting Bio-Reigns

---

[5] *See* https://www.youtube.com/watch?v=dgZTQpsi0E&t=1409s&fbclid=IwAR0nMZg7DfUQhZBrh.

[6] Neither party expressly identifies when the defendants' affiliation with MDC was terminated. Giaquinta was sent a letter that her account was suspended on September 27, 2019 and the alleged disparaging comments occurred after that date. ECF No. 10-1 at 4-5.  Hunter's account was suspended on February 7, 2020, she publicly announced she had left MDC on February 9, 2020, and the alleged disparaging comments occurred after that. *Id.* at 5-6.  It is MDC's burden to demonstrate that the alleged violations occurred while the defendants were MDC affiliates.  It has not done so.

products and discussing how she prefers Bio-Reins' compensation plan, even if considered disparaging, occurred on January 16, 2020. *Id.* at 5.

The same applies to Hunter's alleged disparaging comments. *See id.* at 6 (describing a February 9, 2020 Facebook post where Hunter said she was unhappy with MDC's products, people, and culture and a March 8, 2020 YouTube video where Hunter promotes Bio-Reigns and allegedly called MDC's products ineffective). MDC has not shown a likelihood of success on the merits of its claim that the defendants breached this section of the P&P, and it cannot rely on this evidence to demonstrate irreparable harm.

MDC asks that I interpret Section 36.5 to also prohibit disparaging comments following an affiliate's termination with MDC. ECF No. 22 at 9-10. I decline to do so. "It has long been the policy in Nevada that absent some countervailing reason, contracts will be construed from the written language and enforced as written." *Ellison v. California State Auto. Ass'n*, 797 P.2d 975, 977 (1990) (finding contract will be enforced as written if the language is clear and unambiguous). Other sections of the P&P expressly restrict the conduct of former affiliates. The language in Section 36.5 does not. It restricts only current affiliates' conduct and it instructs affiliates to submit their criticisms to the Compliance Department. ECF No. 10-1 at 50. Thus, MDC fails to demonstrate that the defendants violated this section of the P&P and that MDC is suffering irreparable harm.

In sum, MDC has not presented sufficient evidence to warrant granting a preliminary injunction. Consequently, I deny MDC's motion.

/ / / /

/ / / /

/ / / /

**III.  CONCLUSION**

I THEREFORE ORDER that plaintiff My Daily Choice, Inc.'s motion for leave to file under seal **(ECF No. 9) is DENIED.**  The clerk of court is instructed to unseal the motion for preliminary injunction and the corresponding exhibit **(ECF Nos. 10, 10-1).**

I FURTHER ORDER that plaintiff My Daily Choice, Inc.'s motion for preliminary injunction **(ECF Nos. 8, 10) is DENIED.**

I FURTHER ORDER that defendants Shanna Lee Hunter and Summer Giaquinta's motion to dismiss for lack of personal jurisdiction **(ECF No. 11) is DENIED.**

DATED this 30th day of July, 2020.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE